TIOGA COUNTY.—HON. CHARLES A. CLARK.—SURROGATE.—
FEBRUARY, 1876.

## CAMP *v.* CAMP.

*In the matter of the final accounting in the estate of* SYL-
VESTER CAMP, *deceased.*

Where a person having made advancements to his sons and daughters,
in different sums, at their request, during life, taking receipts express-
ing such sums to be a part of their apportionment of his estate,
afterwards makes a will appointing executors, but making no testa-
mentary disposition other than a direction that all his property be
equally divided between his children, such advances must be taken
into account in the distribution of the estate.*

THIS was a proceeding for the final accounting of
the estate of Sylvester Camp, deceased.

The testator died on the 28th day of June, 1873, in
the County of Tioga, having on the 1st day of Febru-
ary, 1872, executed a will in which he appointed his
son, Nathan P. Camp, and his daughters, Mary Merser,
eau and Marinda Marean, executors; and directed them
to collect together all his personal estate of every name,
and nature, and sell the same to the highest bidder-
together with all his real estate ; and the avails thereof
to be equally divided between his ten children : Oliver
Camp, Mary Mersereau, Lovisa Storms, Marinda Ma-
rean, Emeline Jerome, Nathan Camp, John Camp,
Chester Camp, Diana Camp, and Jane Harris.

He had previously advanced various sums to his
children, taking a receipt for each advancement in such
form as to show clearly that the contract between him

---

* Where the direction was that the fund be *equally* divided among he
donees, as if the testator had died intestate, and their relation to the
testator, is such that they would take unequally under the statute, they
will take unequally under the will. (Murdoch *v.* Ward, 8 *Hun.* 9.)

and his children, was that out of their respective portions or shares of his estate, there was to be deducted the sum so paid. The receipts were as follows:

"Received, Campville, March 19th, 1867, of Sylvester Camp, Two Hundred Dollars, as part of my apportionment, to be deducted out of the estate of said Sylvester Camp.

"*Emily Jerome.*"

The receipts were for varying amounts, but were all expressed as above, except some which were more briefly expressed "as a part of my apportionment of his estate."

These receipts or contracts showed that to his daughter, Mrs. Jerome, had been advanced $200; his son, Oliver Camp, $1,036.87; his son, Chester Camp, $783.33; his daughter, Mrs. Storms, $180; his son, Nathan P. Camp, $500; his daughter, Mary Mersereau, $200; his son, John Camp, $560; his daughter, Dianna Camp, $100; his daughter, Mrs. Harris, $200; and to his daughter, Mrs. Marean, $190.

The deceased, in his will, simply appointed executors and gave them certain directions, and among the directions, one to bring all his property in hotchpot and divide it equally among his ten children. He did not by his will otherwise give, bequeath, or devise, his property or any part of it, but died totally intestate, so far as his estate was concerned, except the appointing of executors to manage the same, and the direction to them to distribute, according to the statute.

F. B. Smith, *for those of the children who had received the smaller sums.*

Charles E. Parker, *for* Oliver Camp, *and others, opposing the taking of the gifts or advancements into account, relied on* 3 *Sandf. Ch.*, 120.

The Surrogate.—There is no will in this case dis-

posing of any part of the property differently than it would be disposed of, if the deceased had died totally intestate.

There probably can be no doubt, but that, as a principle, the Statutes of the State of New York, concerning advancements, apply only to the estates of intestates ; that the statutes distribute the individual's property who has not distributed his own, (1 *R. S.* 754. § 23,) although the Statute reads, " Every estate or interest given by a parent to a descendent, by virtue of any beneficial pow-,er, or of a power in trust with a right of selection, shall be deemed an advancement to such descendent." (1 *R. S.* 737, § 127.)

In this case, the deceased held a contract from each of his children, that they would account to his legal representatives upon the settlement of his estate, for so much as they had respectively received out of their said several shares of his estate.

Now if he had intended in the will to have forgiven each of these his children, the sums they had so been advanced, how easy it would have been to express it in the will. But, the language of the will has no such import. (*Van Alstyne* v. *Van Alstyne,* 28 *N. Y. Rev.* 375).

The sons have received sums differing from each other, and the daughters have received sums differing from each other, and differing from the sums received by any of the sons, and there is nothing indicating that the deceased intended any such discrimination between his children, but everything indicated, on the contrary, that his intention was an equal distribution of all his property among his ten children, he having made no bequests or devises in his will, but having simply given a direction to the executors what to do in relation to his property, and simply adding, " the avails thereof to be equally divided between my ten children." This is

no disposition of it, or any part of it, by will, any more than it would have been, had he added to the directions given his executors. that the avails thereof were to be divided between his ten children according to the statute.

And the sums advanced to each of these ten children are parts of his estate, and must be so considered in the distribution of his estate (2 *R. S.* 97, §§ 76, 77,) and the order on the final accounting will be entered in accordance with the view of the case as herein expressed.

Ordered accordingly.