NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—July, 1883.

## EISNER v. KOEHLER.

*In the matter of the estate of* HENRY EISNER, *deceased.*

Where a will attaches to a legacy an *enabling* condition, it is an immaterial circumstance whether the condition is fulfilled before or after testator's death.

*It seems,* that the term "lapsed," as employed in reference to legacies, may be predicated of one which has failed by the happening, in the testator's lifetime, of some event, other than death, and upon the happening of which the will has provided that the legacy shall cease.

Testator, by his will directed that, upon his "son M. attaining the age of twenty-one years," his executors give to his said son the sum of $10,000. M. became twenty-one years of age before his father's death. Upon a petition by him to compel payment of a portion of his legacy, certain of the executors contended that the same had lapsed.—

*Held,* that, the legatee's attainment of majority being the essence of the condition, the purpose was answered by his coming of age in the lifetime of the testator, and that the application should be granted.

While the word "advancement" is a technical term, and must ordinarily be construed in its technical sense when used by a father in connection with a testamentary provision for a child, a strict interpretation is not always required, and may be sometimes quite inconsistent with surrounding circumstances.

Testator's will gave the residuum, at the death of his wife, to his children then living, and to the issue of such as might then have died, and added: "but in such final distribution of my estate, any sum by way of advancement theretofore received by any of my children, *either from me during my lifetime, or under the provisions of this my will,* shall be deducted from the share of the one so receiving such advancement in such manner that each of my children shall receive, including such advancement, an equal share of my estate." M., a son and legatee, having received from the executors payment of a portion of a legacy of $10,000, petitioned for payment of the remainder. It appeared that he had received from testator, during his lifetime, $5,000, which was charged in the account books of the latter.—

*Held,* that this $5,000, whether a loan or a gift, must be deemed an "advancement," within the meaning of the provision quoted, so as to

justify the executors in paying the legacy, and in delaying, until the final distribution of the estate, efforts to call petitioner to account for the sum so charged.

Chase v. Ewing, 51 *Barb.*, 597—compared.

PETITION, by Julius H. Eisner, a son of decedent, to compel the executors of the latter's will to pay the residue of a legacy; opposed by David M. Koehler and Albert Freund, executors. The facts appear sufficiently in the opinion.

MILLER, PECKHAM & DIXON, *for petitioner.*

R. S. NEWCOMBE, *for opposing executors.*

THE SURROGATE.—The following are among the provisions of the will of this testator: At the expiration of one year from his death, his executors are directed to pay to each of his sons, Louis and Samuel, the sum of ten thousand dollars, if the condition of his estate is such as to make practicable the payment of a like sum to certain others of his children, as provided in a "subsequent clause" of the will; otherwise, to pay such a sum only to Louis and Samuel as will leave remaining a like sum for each of such other children.

The "subsequent clause" is in these words: "And upon each of my sons, Marcus and Julius, attaining the age of twenty-one years, and upon each of my daughters, Frances and Mary, attaining the age of twenty one years (or in case either of my daughters shall marry before that time, with the consent and approval of her mother, if living, then upon her marriage), I direct my executors to give to each of my said sons and daughters the sum of ten thousand dollars. . . ."

These bequests, like those to Louis and Samuel, the

children first named, are saddled with a proviso that they shall abate *pro rata*, if the funds applicable thereto are not sufficient to justify payment in full.

This will was executed in 1875, when the testator's son Julius, who is the petitioner in this proceeding, was about fifteen years of age. He attained his majority in December, 1881, while his father was yet alive. He now asks for an order directing the executor, from whom he has already received part of his legacy of ten thousand dollars, to pay him the remainder. It is not disputed that his petition is correct in its averment that this legacy, if due, may now be fully discharged without jeoparding in the least the rights of the other beneficiaries under the will. Some of the executors resist his application, however, upon two grounds, which will be now considered.

*First.* They insist that the ten thousand dollar legacy, to which he lays claim, "lapsed" because of his attaining his majority before the death of his father. The term "lapsed legacy" is generally applied to a testamentary gift, which has become inoperative by reason of the death, in the lifetime of the testator, of the person named as legatee. The expression, however, is sometimes used in cases where a bequest has failed by the happening, in the testator's lifetime, of some event other than that of death, and upon the happening of which event his will has provided that the bequest shall cease.

For example, it has been decided that a bequest to A. so long as she shall remain unmarried fails, and partakes of the nature of a lapsed legacy, upon the marriage of A. in the lifetime of the testator (see Andrew v. Andrew, *1 Coll. C., 690*).

I have been unable, however, to discover any case in

which a legacy has been held to have "lapsed" because an event, upon whose happening a legacy was made to *take effect* under a testator's will, had come to pass before his death. It is claimed, by the respondent executors, that this will must be deemed to speak from the death of its maker, and that, only in the contingency of his attaining his majority after that date, could Julius become entitled to his bequest.

The case of Andrew v. Andrew (*supra*), and other cases which discuss the doctrine of the lapsing of legacies, so far as they are applicable at all to the present contention, suggest, it seems to me, a view precisely opposite to that upon which these respondents insist. Those cases say, in effect. that, although for most purposes the will of a testator must be held to speak from the day of his death, nevertheless, if he has burdened a legacy with *defeating* conditions, it shall not matter whether those conditions come into existence in his own lifetime or after his decease. In either event, the legacy must fall.

Now, it seems to me to be well argued, by parity of reasoning, that, when a testator has attached to a legacy what may be called *enabling* conditions, it is an immaterial circumstance whether the conditions are fulfilled before his death or after.

Andrew v. Andrew (*supra*) decided that a legacy to A., "so long as she should remain unmarried," was defeated by her marriage in the lifetime of the testator. It was evident that the testator, in using the words above quoted, had in his mind the fact that, at the time when he made the provision for her benefit, A. was unmarried, and he meant to declare that, by her retirement from

that state of life, whenever such retirement might occur, she should deprive herself of all right to the legacy.

The doctrine thus established by Andrew v. Andrew —a case which concerned a legacy burdened with a defeating condition—is supported by numerous decisions in cases where the condition, like that in the case at bar, is such as I have characterized an enabling condition.

Where, for example, a testator has made a bequest to one of his daughters, upon her marrying with the approval of his widow or his executor, or some other specified person or persons, it has often been held that the marriage of the daughter in the lifetime of her father, and with his approbation, must be deemed a substantial compliance with the conditions created by the will (Clarke v. Berkley, *2 Vern., 720;* Parnell v. Lyon, *1 Ves. & Bea., 479;* Wheeler v. Warner, *1 Sim & Stu., 304;* Smith v. Cowdery, *2 Sim. & Stu., 358*).

And this in recognition of a principle thus stated by Roper (*Legacies, p. 819*): "The *proper marriage* of the legatee being the essence of the condition, the purpose is answered by the marriage under the eye and with the consent of the testator. The condition, it is true, is not performed according to the letter, but it is so in substance."

The peculiar facts, in the case last above cited, present this doctrine in the strongest possible light. A legacy was bequeathed to A. on the day of her marriage with any other than B., but in case she should marry him, then over. Notwithstanding the fact that she actually married B., she was held entitled to the legacy, because such marriage took place in the lifetime of the testator, and with his knowledge and approval.

It seems to me that the rule governing this class of cases, as it is laid down by Roper, *supra*, may be fairly stated, when applied to the case at bar, as follows: "The legatee's attainment of his majority being the essence of the condition, the purpose is answered by his coming of age in the lifetime of the testator."

And it cannot fail to be remarked that this rule, as applied to such a state of facts as is here presented, does not need to be qualified, as it has been necessarily qualified in the cases heretofore cited, by the statement that, while it fails to recognize the necessity of literal obedience to conditions established by a testator, it nevertheless demands that they be substantially fulfilled. That a bequest conditional upon the legatee's attaining majority may fairly be governed by the rules of interpretation applicable to the case of a bequest dependent upon a legatee's marriage with approval seems evident upon the slightest consideration, for, in both cases, the condition is presumably imposed with a view of protecting the inexperience of youth. A testator who thinks it wise, in making provision for his minor children, to tie up the inheritance of a son during his minority, and to place similar restrictions upon his daughter, unless before coming of age she shall contract a suitable marriage, is likely to be quite indifferent as to whether the conditions which he has imposed are fulfilled before or after the day of his own death.

The existence of this close analogy, between the case of a legacy conditioned upon an approved marriage, and of one conditioned upon attainment of majority, is emphasized in the will of this decedent, by the immediate association of the two in the very provision upon which this petition is founded.

In the same clause, Mr. Eisner gives a bequest to each of two minor sons upon his becoming twenty-one years old, and to each of two minor daughters upon her attaining that age, *or* upon her marriage before that time, with her mother's approval.

I am at loss to see how any argument can be urged in favor of excluding the petitioner from enjoyment of his legacy, because of his fulfilling in decedent's lifetime the condition upon which that legacy was made dependent, which could not have been pressed with equal cogency against the claim of one of the daughters, if she had married before her father's death.

In many cases, where testators have given bequests dependent upon the doing of what had already been done, or the happening of events which had already happened, the impossible conditions have been disregarded and the bequest sustained. For example, in the case of a legacy to A., "if he remit the debt due to him from B.," the bequest has been pronounced absolute, where the debt was remitted prior to the date of the will. So, too, a legacy to A., upon the contingency of a particular vessel returning from a voyage, has been upheld upon the discovery that such vessel had already come into port (Roper on Legacies, 566).

In both of the last two cases, the event upon which the legacy was conditioned had actually taken place before the execution of the will, but if it had come to pass between that date and the day of the testator's death, the ruling would manifestly have been the same, because it would manifestly have been grounded upon the same principle.

The decided cases to which I have referred clearly

establish that, in the interpretation of such a condition as the one under review, it is proper to inquire what purpose the testator had in imposing it, and that, in the absence of any language indicating a contrary intention, such condition should be deemed fulfilled whether it has been satisfied after the testator's death, or before that event and subsequently to the execution of the will, or even before such execution.

The good sense of this rule of interpretation can perhaps be no more effectually shown than by the manifest insufficiency of any other, in dealing with such a will as was the subject of consideration in Tattersall v. Howell (*2 Meriv.*, *26*). A reference to the facts of that case may, therefore, serve a useful purpose, though the point involved in its decision was quite foreign to the present discussion.

A testatrix made this disposition in her will: "Provided my son changes the course of life he has too long followed, and will give up all his low company and frequenting public houses and vices, I then leave him the interest of five thousand five hundred pounds out of my residue, for his life . . . but if he will not give them up entirely, then I only leave him fifty pounds a year for life."

Now, if the executor's contention in the present proceeding is correct, the son of the testatrix, in the case just cited, would have absolutely forfeited his legacy of £5,500, if, in deference to his mother's manifest wishes, he had reformed in her lifetime. In other words, it was absolutely necessary for him, in order to entitle himself to the legacy, to continue his evil companionship and his resort to "public houses and vices" until the death of

his mother. Such a construction of the will is manifestly absurd. But why? Simply because it utterly ignores the spirit and purpose of the condition. If that spirit and purpose may be sought for in a testator's words, then it seems clear to me that, in the case at bar, the legacy to Julius Eisner is just as effectual as if he had but yesterday attained his majority.

*Second.* It is alleged by the objecting executors that the petitioner is charged, in certain account books of his father, "with a check of $5,000, in like manner as the testator on said books charged loans made by him to various business friends and acquaintances." The executors add that "whether said $5,000 so charged is to be deemed a loan to be collected from the petitioner, or as an advancement, to await final distribution of the estate under the terms of the will," they are not informed.

The language of the testator, which occasions this controversy, is as follows: "All the residue . . . of my estate which may remain at the death of my wife . . . I give unto my children then living and to the issue of any who may have died . . . but in such final distribution of my estate, any sum by way of advancement theretofore received by any of my children, *either from me during my lifetime or under the provisions of this my will*, shall be deducted from the share of the one so receiving such advancement in such manner that each of my children shall receive, including such advancement, an equal share of my estate."

It is conceded by the petitioner that he received from his father the sum of $5,000, and that the same was never repaid. Upon these facts, the question arises whether or not this $5,000 should be deemed an "ad-

vancement," within the meaning of that expression as used in the will, so as to justify the executors in paying the legacy which I have just held to be valid, and in delaying until the final distribution of the estate any efforts to call this petitioner to account for the $5,000 he received from his father.

It is suggested, on behalf of the executor, that the word "advancement" has a fixed and precise meaning in testamentary law, and that it is not sufficiently comprehensive to include a loan such as the transaction between the petitioner and his father may prove to have been.   It is doubtless true that the word "advancement" is a technical term, and that it must ordinarily be construed in its technical sense, when used by a father in connection with a testamentary provision for a child; but a strict interpretation is not always required, and may sometimes be quite inconsistent with surrounding circumstances.   Such, indeed, seems to be the case here.   The will itself contains internal evidence that the testator did not design to restrain the meaning of the term in question within its ordinary limits, for he directs that, for the purpose of ultimate equalization, advancements *theretofore* received by either of my children" (that is, received by them before such final distribution) "from me during my lifetime *or under the provisions of this my will*," shall be taken into account.   These words can receive no possible interpretation, which does not necessitate the enlargement of the meaning of the word "advancement" so as to cover all sums received by the beneficiary from the executors in the course of their administration of the estate, including, for example, the very legacy which is here the subject of controversy.   It is clear, therefore, that the word "ad-

vancement" is not to be limited to its strict technical sense, and I take it that, entirely apart from the consideration whether the $5,000 which the petitioner received from his father was a loan or a gift, it was an "advancement," within the true meaning of that word as used by the testator.

The case of Chase v. Ewing (*51 Barb.*, *597*) has been cited in support of the opposite view. The will there under consideration contained this clause: "Whatever *advances* I have made to any of my children . . . . for which any receipts or other evidences of indebtedness may be found among my papers after my decease, I hereby give and devise to my said children, to each one the advance made to each, my intention being by this that such receipt or other evidence of indebtedness shall not be calculated or enforced against them or either of them who may have signed the same." The court held that "the entire tenor and scope of the clause showed clearly that the testator had in view, not gifts and advancements previously made *as such*, but only advances in the nature of loans, for which the testator held vouchers whereby the claims could be enforced."

This was simply a determination that, under the particular facts and circumstances there appearing, the word "*advances*," as used by the testator, was so limited in its meaning as not to include "*advancements*" in the ordinary acceptation of that term. The case has little bearing here, but the tendency of the decision is rather for than against the conclusion which I have reached in the case at bar.

The petition herein is granted, and a decree may be entered accordingly.