## *In re* TURFLER'S ESTATE.

### (1 Misc. Rep. 58.)

*(Surrogate's Court, Rockland County, Filed October, 1892.)*

1. LEGACIES—ADVANCEMENTS.

The statutes of descents (1 Rev. St. p. 754, secs. 23-26) and of distributions (2 Rev. St. p. 96. secs. 75-77) as to advancements, only relate to cases of intestacy.

2. ADEMPTION—BEQUEST OF RESIDUE.

Testatrix provided by her will that her property should be sold and the proceeds equally divided amongst her five children. After the execution thereof she made advances to them, and took a receipt from each which expressed that testator intended to advance each $5,000. Three of the receipts were for the full sum of $5,000, but two were for less than that sum. After testatrix's death, her executor, prior to an equal distribution of the assets, paid to each of the two children who had received less than $5,000 the difference necessary to make up the $5.000 which testatrix intended to give each in her lifetime. *Held,* that the payments so made were authoritatively made as advances or payments, to carry out the intention of the testatrix to equalize the distribution of her property among all of her children.

3. SAME.

The principle of ademption of a legacy is applicable to a bequest of residue.

4. SAME—DEVISE OF REALTY.

In such case the proposition that the rule of ademption is only predicable of legacies of personal estate, and is not applicable to devises of realty, does not apply, as the will devised the real estate to the executor in trust to sell the same and divide the proceeds, and in

any event, as the executor had received $24,000 of personalty, and applying the rule of ademption to only a bequest of personalty, strictly such, the payments to the two children in question were properly made.

5. ESTOPPEL OF LEGATEE—PAYMENT AS ADEMPTION.

When one of such residuary legatees gave her assent without qualification to the making of the payments so as to equalize the two children who had received less than $5,000 with the other children, and withheld objections to the same being made, knowing that the same were being made, or were about being made, until the payments were actually made, and then first interposed objections, *held*, that such legatee was estopped from claiming that such payments were illegally and improperly made.

Judicial settlement of accounts of Jacob C. Turfler, executor of the last will and testament of Elizabeth Turfler, deceased.

Scott & Upson, for executor; T. C. Cronin and I. Newton Williams, for contestant, a residuary legatee.

WEIANT, S.—The testatrix, Elizabeth Turfler, died February 9, 1886, leaving a last will and testament, bearing date February 16, 1882, and a codicil thereto, bearing date October 28, 1885, and appointing her son, Jacob C. Turfler, the sole executor thereof. By her said will the said testatrix directed her funeral expenses and debts to be first paid. Secondly and thirdly, she made bequests of certain articles of personal property to her two daughters, Amy Williams and Cornelia R. Kroehl. Fourthly, she gave to her said daughter Amy Williams the right to use and occupy a house and lot, No. 583 St. Mark's avenue, Brooklyn, for five years from May 1, 1882, upon certain conditions as to the payment of repairs, taxes, etc., and with the right to purchase the same from the executor at any time within such period for the price of $5,000, on certain terms therein prescribed as to payment and security. Said provision terminates with the following words: "But, if my said daughter Amy shall so purchase the said house and lot, she shall pay therefor the whole of said sum of five thousand dollars, and shall have no share with my other children in the purchase price

thereof, as hereinafter provided concerning any other property."

The testatrix then makes the following disposition of her property: "All the rest, residue, and remainder of my estate, whether real or personal, * * * I give, devise and bequeath to my said executor in trust, to sell the same * * * at public or private sale, and at such times and in such manner as he may deem best, but all (except the St. Mark's avenue house and lot above) within one year after my death, and the proceeds of such sales * * * to divide equally among my five children, namely, the said Amy Williams, the said Cornelia R. Kroehl, George C. Turfler, Jacob C. Turfler and Francis A. Turfler."

Here then follows a bequest and devise in case of the death of either child, and the testatrix then adds: "And my said executor shall make division of such proceeds among my said children or children and grandchildren as often as such proceeds of sales or accumulations of moneys in his hands shall amount to $2,500."

The instrument then terminates with the appointment of the executor. By the codicil the testatrix makes only the following provision: "It being my intention to make a gift to my daughter Amy Williams of the property mentioned in the fourth paragraph of my foregoing will, and the expenses of that property in repairs, taxes, etc., since the execution of my said will, having been paid by me, I do hereby revoke and declare null and void the said fourth paragraph of my said will."

After the execution of her will, the testatrix made advances or loans, from time to time, to each of her said children, and on December 10, 1885, took from each of her said children, George C. Turfler, Jacob C. Turfler, Francis A. Turfler and Cornelia R. Kroehl a receipt or acknowledgment in writing, executed by each respectively and separately, and reciting in each substantially that "My said mother having determined to make gifts or advances to all of her children to the amount of $5,000 each, * * * so that the said payments and loans may be treated as a gift or advance, this is to acknowledge that I have received from her the said sum of $5,000 as such gift or advance."

The acknowledgment of George C. Turfler, however, recites that he has received only $2,100, "on account and as part of such gift or advance of $5,000," and that of Francis A. Turfler that he has received "from my said mother the said aggregate of $2,420 on account, and as part, of said sum of $5,000 so advanced, and to be advanced, to me." The daughter, Amy Williams, the only contestant herein, executed the following acknowledgment as to her advancements:

"Received, December 10, 1885, of Elizabeth Turfler, a deed from her to me of the property known as number 583 St. Marks avenue, in the city of Brooklyn, my mother, the said Elizabeth Turfler, having made gifts or advances to several of her children, and having determined to make such gifts or advances to all her children, equally to each child, the sum or equivalent of five thousand dollars, this receipt is an acknowledgment that I have received in the said property above mentioned the whole of such sum of five thousand dollars as such an advance to me."

George C. Turfler and Francis A. Turfler received no further payments or advances during the lifetime of the testatrix, except one of $500 to George, on January 11, 1886, "on further account of the above-mentioned advance of $5,000," making his aggregate payments $2,600. After her death, and after the probate of her said will and codicil and the granting of letters testamentary thereof to the said executor, and about March 4, 1886, all of the children, or their representatives, held a conference as to the estate matters, and as a part thereof the matter of the intended gifts or advances of the $5,000 to each child by the testatrix came under consideration, and the fact that neither Francis nor George had received their full $5,000, Francis having received but $2,420, and George the $2,600, was acknowledged by all. The matter of completing these gifts or advances to them was discussed, and it was agreed by all, including this contestant, that these two brothers should receive an amount of money out of the estate which, with the amount which each had already received, would make the sum of the advances to each $5,000. At least two subsequent meetings of said parties were

had, at which the contestant was present, and the matter of the payment to George and Francis of their respective balances of the sum of $5,000 came under consideration. These latter meetings were held at the office of the counsel for the executor in New York City, about the respective dates of March 10 and April 15, 1886. About said 10th day of March the executor paid to George and Francis the respective sums of $2,400 and $2,580, as their respective balances of $5,000, and took their receipts therefor. These items appear as credits in Schedule E of the accounts. About the same time the counsel for the executor prepared a writing reciting the facts, with reference to these gifts or advances of the testatrix, and that it was her intention, before her death, to make to each an advance or gift to the amount of $5,000; that George and Francis had only been paid to the respective amounts of $2,600 and $2,420; that, although the will does not provide for payment to them of the remainder of such amount of $5,000 to each, yet it is declared to be just, and it is the desire of the parties that such remainders be paid out of their mother's estate before any division of the same; and that the executor has, at their special request, and their promise of release to him, paid over the said remainders out of the moneys of the estate to said oGeorge and Francis; and then follows a release and discharge of the executor, and acknowledgment of the said payments by him, and an agreement to waive all objections to such payments upon the accounting of the executor. This writing is under seal, and executed by all the children except Mrs. Williams, and is in evidence as "Exhibit 4, May 24, 1892." As to what occurred, and what was said, as to the terms and conditions upon which such payments might be made to George and Francis by the executor, and said writing above should be executed by Mrs. Williams, there is a conflict of evidence. She contends that the payments were to be made, and such release executed by her, only upon condition that a certain Greenwood cemetery plot, constituting a part of the estate, should be conveyed to her by her said brothers and sister, while the executor claims that no condition was imposed, and

no such objection raised, until after he had made the payments agreeably to the consent of all, including Mrs. Williams, given at one or more of these conferences above mentioned. On or about April 15, 1886, the executor paid each child, including the contestant, the sum of $2,500 on account of his or her distributive share of the estate, and so, again, on April 11, 1887, a payment to each of $800.

The contestant now objects to the allowance of these two payments of $2,400 and $2,580, respectively, to George and Francis as credits in the executor's accounts, and contends that the same were wrongfully made and unauthorized. This presents the only question which is submitted to me for my consideration and determination. The counsel for the executor maintains that these payments were properly and legally made, and that the executor should be credited therefor, on these several grounds: (1) That the same were properly made as advances, pursuant to the provisions of the statutes of distribution and descents; (2) that they were authoritatively made as advances or payments, to carry out the intention of the testatrix to equalize the distribution of her property among all of her children; (3) that the payments were made with the consent of all of her children, including Mrs. Williams; that she was present when the payments were made, or had knowledge or information that the same were being made, and made no objection thereto, and that because thereof she is now estopped from claiming that the same were illegally and improperly made. It is my opinion that these payments cannot be sustained upon the first ground. The statutes of descents (1 Rev. St. p. 754, secs. 23-26) and of distributions (2 Rev. St. p. 96, secs. 75-77) as to advancements only relate to cases of intestacy. These statutes have thus been construed by the authorities. Thompson v. Carmichael, 3 Sandf. Ch. 127, cited with approval in Clark v. Kingsley, 37 Hun, 247; Hays v. Hibbard, 3 Redf. Sur. 28; Redf. Pr. (3rd Ed.) 583. My judgment is, however, that the payments are sustainable upon the second ground. The bequests to all of the other children of the testatrix were adeemed to the extent of

$5,000 by the advances of the testatrix in her lifetime, and in the distribution of the estate the executor was authorized to pay to Francis and George these respective amounts in question, to equalize them with the advances to the other children, and then to equally distribute the balance. It is perfectly clear from the evidence that it was the express intention of the testatrix to make an equal division of her property among her five children. She so provides by her will; but after its execution she proposes, during her lifetime, to make an equal division of her property to the extent of $5,000 to each. She carries out that purpose fully as to three of her children, one of whom is this contestant, Mrs. Williams, but fails as to Francis and George to the extent of these respective payments in question. To the extent, therefore, of these payments by the testatrix in her lifetime to each child, his and her legacy or bequest is satisfied. Courts of equity have always treated advances by way of portions as a satisfaction of general legacies given by a parent or other person standing in *loco parentis* to a child. Redf. Pr. (3rd Ed.) 583, and authorities there cited. Ademption is the extinction or satisfaction of a legacy by some act of the testator, which is equivalent to a revocation of the bequest, or indicates the intention to revoke, and the rule is applied where the testator is a parent of the legatee, or stands in *loco parentis*. The question of its application is made to depend upon the declared or presumed intention of the donor. Burnham x. Comfort, 108 N. Y. 535-539, 15 N. E. Rep. 710.

In Benjamin v. Dimmick, 4 Redf. Sur. 7. the learned surrogate says: "There can be no doubt that a legacy from a parent to a child may be adeemed in whole or in part, and the rule thereof may be deduced from the elementary writers upon the subject, as follows: That where a parent bequeathes a legacy to a child, and afterwards, in his lifetime, gives a portion or makes a gift to, or a provision for, the same child, even without expressing it to be in lieu of the legacy, if the gift or provision be certain, and not merely contingent, if no other object be pointed out, and if it be *ejusdem generis*, then it will be deemed

an ademption of the legacy *in toto,* if greater than or equal to, and *pro tanto,* if less than, the provision by the will. The provision by the will is presumed to be a portion, because it is a provision from a parent for his child, and the subsequent gift of a portion is presumed to be a satisfaction of such portion given by the will, either wholly or in part;" citing authorities.

Where a legatee, subsequent to the execution of the will, received from the testator property in lieu of the legacy, the legacy is satisfied. Snell v. Tuttle, 44 Hun, 324-331. Camp v. Camp, 18 Hun, 217, is not in conflict with this principle. In that case it appears that the advances were made prior to the making of the will. It is claimed that this principle of ademption is not applicable to a bequest of residue; but while the earlier authorities seem to have so indicated, yet the later ones hold the contrary. In Montefiore v. Guedalla, 1 De Gex, F. & J. 93, Lord Chancellor CAMPBELL, writing the opinion, says (at page 99):

"It has been said that there cannot be an ademption where a testamentary gift is of the residue of the testator's property. This position rests upon no principle, and, if strictly acted upon, would produce great injustice. The doctrine of ademption has been established for the purpose of carrying into effect the intention of fathers of families in providing for their children, and of preventing particular children from obtaining double portions, contrary to said intention. The only reason for the exception is that a residue is uncertain, and may be worthless. * * * But if a testator, after directing his executor to pay debts, funeral expenses, and legacies, goes on to say, 'And whereas, I wish all the residue of my personal property to be equally divided among my three children, I direct that each of them receive one-third of the residue,' and afterwards he advances $5,000 to a daughter on her marriage, or to a son to purchase a commission in the army, can there be any doubt that he meant this sum to be deducted from the one-third of the residue coming to the daughter or the son?"

Speaking of the cases to the contrary, he says: "The whole

of that class of cases has been swept away by Thynne v. Glengall, 2 H. L. Cas. 131." "Upon the whole [Lord CAMPBELL still writing], I think the question whether a gift or residue does or does not operate as an ademption or satisfaction must depend upon the intention."

The case of Eisner v. Koehler, 1 Dem. Sur. 277, was one of a bequest of the residuary estate, and the doctrine of advancements was applied. In Hays v. Hibbard, 3 Redf. Sur. 28, the learned surrogate holds that the principle of ademption does not apply to residuary legacies. He cites Rop. Leg. 376, wherein he says: "It is stated as a fourth exception to the general rule of presumptive advancement, where the bequest is uncertain in amount, that the devise of the residue, or of part of the residue, to a child, is not adeemed by a subsequent advancement upon the legatee's marriage," etc.

He also cites Williams, Ex'rs. These authorities I do not think sustain the general proposition. The authors cited were treating of the "presumption" of ademption where there is no intention of the testator expressed in the will or other written instrument. Such a case was Hays v. Hubbard, *supra,* and it may be that, resting alone upon presumption, the learned surrogate was correct in the conclusion he reached as to that case, but evidently the authorities he cited do not sustain the general proposition that the principle of ademption does not apply to the residuary legacies. The language quoted by him from Roper expressly shows that the author is speaking of "presumptive advancements." 2 Williams, Ex'rs, 1443, cited, is to the same effect, and holds that this presumption may be rebutted or confirmed of a different intention of the testator. In speaking of the ademption of residuary legacies in 2 Williams, Ex'rs, 1442, the author says: "It was formerly considered that where the bequest to the child is of a residue, or part of a residue, the subsequent advance cannot operate as an ademption, because such a gift cannot be considered as a legacy of a portion, which must mean a legacy of a definite sum; but a contrary doctrine is now established."

In Hopwood v. Hopwood, 7 H. L. Cas. 728, it was declared that the presumption of law is against double portions, and that where a sum of money is given by the will of the parent to a particular child, and a like sum afterwards secured by a settlement on the marriage of that child, there is a presumption in favor of the ademption of the legacy; and see Leighton v. Leighton, L. R. 8 Eq. 458.   The American courts fully recognize the presumption against double portions.   2 Redf. Wills, 447.   It is always a question of the intention of the testator.   In this case the question does not rest solely upon presumption.   The intention of the testatrix is clearly and explicitly made to appear; she intended that an equal distribution of her estate should be made, having in consideration a gift or advance to each child of the sum of $5,000, in cash or other property.   The receipts above mentioned, given by Francis and George, respectively, to the executor, show that each was to have an additional advance sufficient to make up the balance to each of the sum of $5,000. It also appears, from a further receipt given by George under date of January 11, 1886, being shortly before the death of the testatrix, that she paid him $500 "on further account of the above-mentioned advance of five thousand dollars."   There is no doubt as to the intention of the testatrix.   The counsel for the contestant claims that the rule of ademption is only predicable of legacies of personal estate, and is not applicable to devises of realty, and cites the case of Burnham v. Comfort, 108 N. Y. 535, 15 N. E. Rep. 710, as sustaining such contention. The case cited does lay down that proposition, but it is not applicable to this case.   Touching this question, the court rests its decision upon the effect to be given to our statutes regulating the making of wills, and that the application of the rule as to personalty to devisees of real property might work great mischief, and tend to endanger the safety of titles which depend for their security upon the conduit of a testamentary devise.   The writing executed in that instance was not such an instrument as declared the alteration to be either a revocation or wholly inconsistent with the nature of the previous devise.   In this case the

terms of the written receipt given by the children to the testatrix show fully and clearly the purpose of the testatrix to be an alteration of her bequest to the extent of $5,000 to each, and that, unless each child received in full the $5,000, the equality of disposition expressed to be her purpose in her will would fail, and, unless these two sons be paid their respective balances of $5,000, it would bring about a disposition entirely inconsistent with her previous bequest, and clearly declared and expressed intention of equality of disposition of her property. But in this case there is no devise of realty to the children. By her will the testatrix declares: "All the rest, residue and remainder of my estate, whether real or personal, * * * I give, devise and bequeath to my said executor, in trust to sell the same * * * within one year after my death, and the proceeds of such sales, after deducting all necessary and proper expenses of such sales, to divide equally among my five children;" naming them.

Here was no devise of real estate to the children. It was to the executor, in trust to sell the same and distribute the proceeds. By equitable conversion the proceeds became personalty, and it was these proceeds that the testatrix gave to her children. But in either view it seems clear that this question of a devise of realty is not necessarily involved in the adjustment of the matters in controversy on this accounting, for it appears from the accounts that the executor has received of personal assets, concededly such, nearly $24,000, so that applying the rule of ademption and satisfaction to only a bequest of personalty, strictly such, the payments to Francis and George were properly made. I am therefore of the opinion that these payments to the two sons, Francis and George, were lawfully made to them by the executor on account of their distributive shares for the reasons and upon the grounds above stated.

Having reached that conclusion, it becomes unnecessary for me here to review in detail the facts and circumstances having relation to the other ground—that of estoppel. I have, however, carefully considered the evidence bearing upon that ques-

tion, and without here reviewing and analyzing the same in detail, to fully point out the parts thereof which sustain my conclusion, I am of the opinion that an estoppel is established against Mrs. Williams. There is a sharp contention as to whether or not the payments were only to be made upon condition that the Greenwood cemetery plot should be conveyed to her; but it seems to me that the evidence shows quite clearly that at the interview in which these matters came first under consideration, after the death of the testatrix, being at the family homestead at Nanuet, all the matters considered were separately disposed of and agreed upon, and that one was not made conditional upon the other. Mrs. Wingate, the daughter of Mrs. Williams, testifies that the three different matters—the payments to George and Francis, the trustee business, and the Greenwood cemetery lot—were spoken of in that order; and when asked if the Greenwood lot affair and the payments to her uncles were not mentioned at the same time, she answered, "One was mentioned previous to the other;" that the payments came first, and were agreed to, no one objecting, and they were all willing, then the trustee matter, and lastly the cemetery lot matter. Mrs. Williams herself testifies to no conditions. She says "they all consented to give the boys to make up the full amount what mother had intended for them." In answer to the question, "When were those papers to be signed, or that money paid or to be paid?" she said, "There was no definite time for it." Again: "At the Nanuet meeting, were there any papers agreed upon to be signed thereafter? Answer. No." In answer to the inquiry whether papers were to be prepared, she says, "Yes, sir; there were papers to be brought." Then: "Question. What was said in relation to the payments of the money and as to those papers, and the signing of them—when was the money to be paid over? Answer. Didn't say when— what time—it should be paid. Q. But with reference to the signing of the papers, when was it to be paid? A. They didn't specify any time. Q. What did you say in reply when they said they had concluded not to give you the Greenwood lot?

A. Didn't say anything." It seems to me that the only condition or understanding imposed was that no papers should become operative as to Mrs. Williams until submitted to her son for his approval, and not that these payments should not be made. Mrs. Wingate, when asked on her direct examination as to what was said at the Nanuet meeting in relation to paying over any money before the papers were signed, finally answered: "Isaac Newton Williams said that he wished that all papers, all writings, be submitted to him before they were signed by any of the persons." I am impressed by the evidence that Mrs. Williams gave her assent, without qualification, to the making of these payments in order to equalize Francis and George with the other children, and withheld objections to the same being made, knowing either that the same were being made, or were about being made, until the payments were actually made, and then first interposed her objections. It appears to me that after the Nanuet meeting the parties had their next meeting at Mr. Scott's office, about March 10th, and that the release had been prepared for signature on that occasion. It seems to me this must be so, as there appears at the foot of the paper an acknowledgment for Mrs. Williams with the word "March" in it, thus indicating that the writing had been prepared and submitted at some meeting in March. The payments in question to George and Francis were made by checks, which, as also the receipts, bear date March 10th. Mr. Kroehl testifies, and so do others, that the release was then read. He states that on the same occasion, in answer to the question, "Do you know anything about the payments of these amounts to Mr. George and Frank Turfler?" he answered: "Yes, sir; after the paper was signed, upon the statement, he turned over the checks"—meaning the executor. The same day this meeting was had, the checks were delivered while Mrs. Williams was still present. These payments were made on this same occasion at Mr. Scott's office. She made no objection. Mr. Scott's testimony is to the same effect, except that he makes the occasion April 15th when the payment to each child was made of $2,500. In this latter I think he is in error,

26

as the exhibits show.. George C. Turfler's testimony is in accord with that of Mr. Kroehl. An estoppel may arise although there was no designed fraud on the part of the party sought to be estopped, and where there was no intent to mislead, but where what was said was intended to influence the action of the party, and did influence him, and the duty rested upon the party giving the information or making the statement, if he spoke at all, to have ascertained the actual facts, so as not to have misled the other party to his prejudice. An estoppel may also arise from silence, as well as words, where there is a duty to speak, and knowing the circumstances requiring him to speak, keeps silent. Thompson v. Simpson, 128 N. Y. 270-288, 28 N. E. Rep. 627. "The authorities in this state are all harmonious on the subject of estoppel *in pais*. When a party either by his declarations or conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission if the consequence would be to work an injury to such third person, or some person claiming under him." Trustees v. Smith, 118 N. Y. 634-641, 23 N. E. Rep. 1002. Let a decree be submitted for settlement and entry accordingly; costs to be allowed and adjusted on settlement of decree.

(Note on ademption of legacies:)

DEFINITION.—GENERAL OBSERVATION.—WHEN THERE IS ADEMPTION.—WHEN THERE IS NOT ADEMPTION.—RESIDUARY LEGACY.—ADEMPTION PRO TANTO.

## DEFINITION.

Ademption is defined as the act by which a testator pays to his legatee, in his lifetime, a general legacy which by his will he had proposed to give him at his death; also the act by which a specific legacy has become inoperative on account of the testator having parted with the subject. (Anderson's Dictionary of Law, p. 29; Cozzens v. Jamison, 12 Mo. Appeal, 456.)

## GENERAL OBSERVATION.

Ademption is distinguished from satisfaction, in that in equity the latter word is defined as the donation of a thing, with the intention, express or implied, that it is to be an extinguishment of some existing right or claim. (Anderson's Law Dictionary, p. 920.)

"The distinction between ademption and satisfaction lies in this: In ademption the former benefit is given by a will, which is a revocable instrument, and which the testator can alter as he pleases, and consequently when he gives benefits by a deed subsequently to the will, he may, either by express words, or by implication of law, substitute a second gift for the former, which he has the power of altering at his pleasure. Consequently, in this case the law uses the word *ademption* because the bequest or devise contained in the will is thereby *adeemed;* that is, taken out of the will. But when a father, on the marriage of a child, enters into a covenant to settle either land or money, he is unable to adeem or alter that covenant; and if he gives benefits by his will to the same objects, and states that this is to be in satisfaction of the covenant, he necessarily gives the objects of the covenant the right to elect whether they will take under the covenant or whether they will take under the will. Therefore, this distinction is manifest. In cases of satisfaction, the persons intended to be benefited by the covenant, who, for shortness, may be called the objects of the covenant, and the persons intended to be benefited by the bequest or devise—in other words, the objects of the bequest—must be the same. In cases of ademption, they may be, and frequently are, different. The cases of Durham v. Wharton, 3 Cl. & F. 146, and of Thynne v. Glengall, 2 H. L. Cas. 131, afford striking and leading instances of each of these two cases." (Chichester v. Coventry, 2 H. L. Cas. 71.)

Ademption is confined to legacies of personalty. It is not predicable of devises (Burnham v. Comfort, 108 N. Y. 535), and it is not applicable to cases of intestacy.

## WHEN THERE IS ADEMPTION.

A testator bequeathed by a codicil to his will the income of a certain fund to his daughter for life, and the principal upon her death to her children. A prior codicil, which was made applicable to subsequent codicils, declared that as testator might make advancements to persons provided for in his will, such

advances, if charged in his books of account, should be so much on account of their legacies.   The testator subsequently transferred the fund in question to a trustee for said daughter, and her children, and the daughter subsequently received the income.   *Held,* that the legacy was adeemed.  (Langdon v. Astor's Executors, 16 N. Y. 9.)

A testator specifically bequeathed a bond and mortgage which was afterwards foreclosed, and the purchaser, the mortgagor, executed a new bond for his debt, secured by a new mortgage upon the same premises.   *Held,* that the legacy was adeemed, although testator left a memorandum in his handwriting that the purchaser's bond and mortgage was but a renewal of the bond and mortgage bequeathed, and that it was his intention that it should pass to the legatee.   (Beck v. McGillis, 9 Barb. 35.)

A testator bequeathed to his executors a certain bond and mortgage (which was overdue at the date of his will and to which fact his attention was sharply called) in trust to pay the interest to his cousin for life, and upon his death to convert same into money and divide the proceeds amongst his said cousin's children.   The mortgage was soon afterwards paid up, and testator deposited the proceeds with a firm with whom they were thereafter continuously kept.   *Held,* that the legacy was a specific legacy, and was therefore adeemed.   (Abernathy v. Catlin, 2 Dem. 341—citing Ashburner v. McGuire, 2 Bro. C. C. 108; Pitt v. Cannelford, 3 Bro. C. C. 160; Stanley v. Potter, 2 Cox, 180; Badrick v. Stevens, 3 Bro. C. C. 431; Innes v. Johnson, 4 Ves. 568; Fryer v. Morris, 9 Ves. 360; Barker v. Rayner, 5 Madd. 208; 2 Russ. 122; Gardner v. Hatton, 6 Sim. 93.)

Testator directed that on the death of his wife, to whom he gave a life interest in an undivided moiety of real estate, the same should be sold and the proceeds divided equally between his three daughters.   Subsequently A., one of the daughters, accepted a conveyance from the testator and his co-owner of a portion of such real estate, and in consideration thereof executed a release of all her interest as heir-at-law of testator in said undivided moiety of real estate.   *Held,* that as the real estate mentioned was directed to be converted into money at a future day, and the avails divided among the daughters, the rules applicable to personal bequests were to control, and that by executing the deed and release A. discharged the interest given to her by the will—distinguishing Burnham v. Comfort, 37 Hun,

216. The court said that the latter case does not hold that a devise cannot be satisfied by a subsequent conveyance of land, but that a devise cannot be satisfied by a subsequent payment of money. (Snell v. Tuttle, 44 Hun, 324.)

A testator gave to each of four persons one share out of the four owned by him in the Passaic Water Enterprise held in trust for him, and he directed a trustee named by him to transfer to said persons said shares, or the proceeds thereof, when realized, in the same manner as the said shares would have been to testator. After the execution of his will he sold out the so-called "shares" (which consisted of an undivided interest which decedent had in a joint business undertaking), and invested the greater part of the proceeds in the purchase of fifty bonds of a corporation known as the Passaic Water Company, thirty-eight of which bonds he had at his death. *Held,* that the legacies being specific, the effect of the sale was to cause an ademption thereof, and that the direction to the trustee did not show an intention to make the proceeds of the sale stand for the shares so that the bonds representing such proceeds should be deemed to be within the subject-matter of the bequests.

Testator added a writing below the attestation clause of his will, reciting the sale of the shares and purporting to give to each of the legatees general legacies in lieu thereof. *Held,* that as the paper was not executed as a will, the beneficiaries took no interest thereunder, and that although it manifested an intention on testator's part that the legatees of the shares should receive the proceeds of their sale, such intent was formed after the sale, and not at the time of the execution of the will. (Hosea v. Skinner, 32 Misc. Rep. 11—reversing Matter of Andrews, 25 Misc. Rep. 72.)

### WHEN THERE IS NOT ADEMPTION.

A testatrix bequeathed to her mother the sum of $1,200 and interest on the same, contained in a certain bond and mortgage, for her life, and upon her death to testatrix's husband. *Held,* that the legacy was general and not specific, and did not adeem by extinction of the mortgage in testatrix's life. (Giddings v. Seward, 16 N. Y. 365.)

A testator by his will gave his daughter a legacy of $400, and subsequently handed her that sum as a present, and on the same day executed a codicil by which he gave the legacy of $400 on his daughter's death without issue to certain persons. *Held,* that the legacy was not adeemed, as the testator recognized the

legacy as a thing still in his mind, and remaining of force in his will. (DeGroff v. Terpenning, 14 Hun, 301.)

When testator gave advances to his children of unequal amounts, and then made a will dividing his property equally among his children, but making no reference to the prior advancements, *held,* that the advancements should not come into account in the division. (Camp v. Camp, 18 Hun, 217—reversing 2 Redf. 141.)

By different clauses of a testator's will, gifts of stocks of two railroads owned by him were made to his children and other persons in various amounts. The railroads were subsequently consolidated, and the newly issued stock was sold by a committee of the testator, who had become insane. *Held,* that there was no ademption, as the new stock in substance took the place of the old, and the sale by the committee was in no sense a transaction of the testator. (Shethar v. Sherman, 65 How. Pr. 9— citing Simmons v. Vallance, 4 Bro. C. C. 345; Purse v. Snaplin, 1 Atk. 414; Sibley v. Perryn, 7 Ves. 523; Tifft v. Porter, 8 N. Y. 516; Langdon v. Astor, 1 Duer, 478-546, 16 N. Y. 33; Giddings v. Seward, 16 N. Y. 365; Sleech v. Thorington, 2 Ves. Sr. 560; Robinson v. Addison, 2 B. 515; Ashburner v. Maguire, 2 Bro. C. C. 108; Mytton v. Mytton, L. R. 19 Eq. 30; Bothamby v. Shearsan, L. R. 20 Eq. 304; Norris v. Executors Thompson, 2 McCarter, 493, 16 N. J. Eq. 250; Chaworth v. Beech, 4 Ves. 566.)

The rule of ademption is predicable of legacies of personal estate, and is not applicable to devises of realty. The reason for refusing to extend the rule to devisees of real estate is that to so extend it would repeal the statute which applies to the revocation of wills. A testator devised to his daughter certain real estate, and thereafter paid her a sum of money, which he intended to be in lieu of the devise, and it was so accepted by her at the time, and such acceptance was expressed in a receipt she gave for the money. The testator did not subsequently alter his will. *Held,* that as the signing of the receipt and the payment of the money did not constitute a revocation of the will within the meaning of the Revised Statutes (3 R. S., Banks, 7th Ed., 2286, 2288), the daughter was entitled to the real estate devised to her. (Burnham v. Comfort, 108 N. Y. 535, affirming 37 Hun, 216—citing Davys v. Boucher, 3 Y. & C. Eq. Rep. 397; Langdon v. Astor's Executors, 16 N. Y. 34; Clark v. Jetton, 5 Sneed, 229; Allen v. Allen, 13 So. Car. 512; Weston v. Johnson, 48 Ind. 1.)

Testator in his will prefaced a list of legacies, among which was one of $500 to plaintiff, by a statement that he had "at present" certain mentioned securities amounting to a certain sum; the legacies were then bequeathed, and all the residue of his personal estate given to his wife.    He then mentioned that a certain further sum was due to him, and "when this is collected" he directed the payment thereout of certain legacies, including one of $100 to plaintiff, and the remainder of his personal estate he gave to his wife.    The debt due testator was paid to him during his life, and it was proved that the executrix had received, and there was in her hands, enough to pay both legacies to plaintiff, and that she had appropriated the estate individually.    *Held,* that both legacies were general, and not subject to ademption by the extinguishment of the securities specified.    (Glover v. Glover, 47 St. Rep. 765, 20 N. Y. Supp. 41.)

Although a will did not contain a residuary clause, testatrix clearly intended her daughter to be her residuary devisee and legatee by giving all her estate except a business carried on by testatrix and license thereto attached, which she bequeathed to her son, and she directed her daughter to pay out of a sum of $1,800 belonging to testatrix deposited in a bank in the daughter's name, the sum of $1,500 to her said son and $50 each to her grandchildren.    The $1,800 would have paid these legacies at the date of the will, but at the testatrix's death nearly all the entire deposit had been withdrawn.    The daughter accepted the devise and bequest.    The son brought an action to establish a charge of the legacy of $1,500 on the property devised to defendant.    *Held,* that the legacy was demonstrative, and not specific, and that as the daughter accepted the devise, the latter became charged with payment of the $1,500.    (Crawford v. McCarthy, 21 App. Div. 484, 47 N. Y. Supp. [81 St. Rep.] 436.)

### RESIDUARY LEGACY.

It was formerly held that the principle of ademption did not apply to a residuary legacy (Hays v. Hibbard, 3 Redf. Sur. 28), but the case in the text, and the authorities there cited, enunciate the contrary doctrine.

### ADEMPTION PRO TANTO.

Where the purpose of a gift is the benefit solely of the donee

himself, he can claim the gift without applying it to the purpose, whether the purpose be in terms obligatory or not, and therefore a bequest to a church to pay off a mortgage will go to the church, though part of the mortgage was paid in testator's lifetime, but the legacy is adeemed, however, to the extent of the testatrix's subscriptions toward paying off the mortgage. (Matter of Gasten, 16 Misc. 125, 74 St. Rep. 538, 38 N. Y. Supp. 948.)

A legacy to a daughter is not adeemed by money gifts made by testator to such daughter prior to the execution of his will, especially when declarations of the testator are proved, showing that the moneys given were intended to be out and out gifts, and were not to be deducted from the portion given her by will. Nor is it adeemed *pro tanto* as to a small amount of such money gifts made subsequently to the will, as such gift was but carrying out testator's purpose entertained long prior thereto. (Matter of Townsend, 5 Dem. 147; affirmed by General Term, 14 St. Rep. 587; by Court of Appeals, 113 N. Y. 560, 23 St. Rep. 722.)